# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RUBY ANN R.,[1]<br><br>                    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner, Soc. Sec. Admin., in official capacity,[2]<br><br>                    Defendant. | Case No. 5:20-cv-00011-SLG |

## DECISION AND ORDER

On or about August 24, 2018, Ruby Ann R. ("Plaintiff") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("the Act"),[3] alleging disability beginning July 2, 2018.[4] Plaintiff has exhausted her administrative remedies

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") 482. The application summaries, not the applications

and filed a Complaint seeking relief from this Court.[5] Plaintiff's opening brief asks the Court to reverse and remand the agency's decision for further administrative proceedings.[6] The Commissioner filed an Answer and a Response Brief.[7] Plaintiff filed a reply brief on July 14, 2021.[8] Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9] For the reasons set forth below, Plaintiff's request for relief is granted.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than

---

themselves, appear in the Court's record. The application summary for DIB lists August 30, 2018, as the application date. A.R. 666. The application summary for SSI lists October 11, 2018, as the application date. A.R. 668.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 25 (Plaintiff's Br.).

[7] Docket 19 (Answer); Docket 31 (Defendant's Br.).

[8] Docket 32 (Reply).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v.*

Case No. 5:20-cv-00011-SLG
Decision and Order
Page 2 of 16

a preponderance."[12]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14]  An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[18]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19]  In addition, Supplemental Security Income ("SSI") may be

---

*NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] 42 U.S.C. § 423(a).

Case No. 5:20-cv-00011-SLG
Decision and Order
Page 3 of 16

available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a

---

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

prima facie case, the burden of proof then shifts to the agency at step five.[25] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[27] *The ALJ determined that Plaintiff had not engaged in substantial activity since July 2, 2018, the alleged onset date.[28]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29] *The ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the left wrist; left foot pain; low back pain with no imaging; possible borderline personality disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD); and obsessive-compulsive disorder. The ALJ determined that Plaintiff's headaches and cervical spine pain were non-severe*

---

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 484.

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

*impairments and that Plaintiff's fibromyalgia was not a medically determinable impairment.*[30]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[31] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[32]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[33] *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: she could stand and walk for four hours and sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; frequently*

---

[30] A.R. 484–85.

[31] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[32] A.R. 485.

[33] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Case No. 5:20-cv-00011-SLG
Decision and Order
Page 6 of 16

Case 5:20-cv-00011-SLG   Document 33   Filed 03/28/22   Page 6 of 16

*handle with the right upper extremity; and perform work involving only occasional interaction with the general public, coworkers, and supervisors.*[34]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[35] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was unable to perform any past relevant work.*[36]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[37] *The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including assembler (DOT #706.684-022); bottle packer (DOT #920.685-026); and basket filler (DOT #524.687-010).*[38]

---

[34] A.R. 486.

[35] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[36] A.R. 490.

[37] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[38] A.R. 491.

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 2, 2018, the alleged disability onset date, through January 23, 2020, the date of the ALJ's decision.[39]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1971 and was 46 years old on the alleged disability onset date.[40] In the past, Plaintiff worked as a snack bar attendant, a cashier/checker, a sales attendant, and a tour guide.[41] On March 21, 2019, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[42] Plaintiff appeared and testified without representation at a hearing held on January 6, 2020 in Anchorage, Alaska before ALJ Paul Hebda.[43] On January 23, 2020, the ALJ issued an unfavorable ruling.[44] On August 11, 2020, the Appeals Council denied Plaintiff's request for review.[45] On September 28, 2020, Plaintiff appealed the Commissioner's final decision to this Court.[46]

---

[39] A.R. 491–92.

[40] A.R. 490.

[41] A.R. 490.

[42] A.R. 562–63.

[43] A.R. 500–08. Plaintiff's non-attorney representative did not attend the hearing and Plaintiff waived her right to representation under oath. A.R. 500–03.

[44] A.R. 482–92.

[45] A.R. 1–6.

[46] Docket 1.

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff alleges: (1) new evidence submitted to the Appeals Council established a reasonable probability that it could change the outcome of Plaintiff's case; and (2) the ALJ did not fully and fairly develop the record.[47] Defendant disputes Plaintiff's claims and argues that substantial evidence supports the ALJ's findings "notwithstanding the evidence submitted for the first time to the Appeals Council."[48] The Court addresses Plaintiff's claims herein.

### A. New Evidence Submitted After the ALJ Decision

Plaintiff's appeal focuses on additional evidence from the Ketchikan Indian Community Tribal Health Clinic for the period of January 29, 2020 through June 10, 2020, that Plaintiff provided to the Appeals Council The Appeals Council held that these additional records did not "relate to the period at issue" and did "not affect the decision about whether [Plaintiff] w[as] disabled beginning on or before January 12, 2020," because the ALJ had decided Plaintiff's case on January 23, 2020.[49] Included in these records was a seven-page evaluation form completed by Plaintiff's treating psychiatrist, Dr. Mahija Mungara.

In the Ninth Circuit, "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision,

---

[47] Docket 25 at 8–13.

[48] Docket 31 at 4–8.

[49] A.R. 2, 390–478.

Case No. 5:20-cv-00011-SLG
Decision and Order
Page 9 of 16

the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."[50] The additional evidence must be "new, material, and relate[ ] to the period on or before the date of the hearing decision, and there [must be] a reasonable probability that the additional evidence would change the outcome of the decision."[51] And "[w]here the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider [his] decision in light of the additional evidence."[52]

### 1. Dr. Mungara's 2020 Medical Opinion

On March 12, 2020, Mahija Mungara, M.D., completed a six-page psychiatric/psychological impairment questionnaire.[53] An additional page was added to the questionnaire and dated April 6, 2020.[54] Dr. Mungara stated that she first treated Plaintiff on September 1, 2017, and the date of her most recent examination was January 31, 2020; she had a total of 34 visits with Plaintiff during that time. She diagnosed Plaintiff with bipolar disorder; GAD (generalized anxiety disorder); PTSD (post-traumatic stress disorder); OCD (obsessive-compulsive disorder); BPO (borderline personality disorder);

---

[50] *Brewes v. Comm'r Soc. Sec. Admin.,* 682 F.3d 1157, 1159–60, 1162–63 (adopting *Ramirez v. Shalala,* 8 F.3d 1449, 1451–52 (9th Cir. 1993)).

[51] 20 C.F.R. § 404.970.

[52] *Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1233 (9th Cir. 2011).

[53] A.R. 266–70.

[54] A.R. 265.

and methamphetamine addiction in remission since 2014. She reported that over 15 medication trials had been attempted, but the medications were discontinued due to a lack of benefit and/or negative side effects. Dr. Mungara provided functional limitations based on full-time work, including marked limitations in understanding and remembering detailed instructions; concentration and persistence; social interactions; and adaptation. Dr. Mungara opined that Plaintiff would be absent from work more than three times per month due to her impairments.[55]

Plaintiff asserts that "the most important evidence submitted to the [Appeals Council] was the discussion of medical history and opinion of Dr. Mungara as well as the additional mental health treatment records . . . ."[56] Defendant disagrees and contends that Dr. Mungara's 2020 opinion[57] was outside of the relevant disability period, did not undermine the ALJ's findings, and "simply reiterate[d] the points she made in an earlier September 2019 letter that *was* submitted to and addressed by the ALJ."[58]

Contrary to the Appeals Council's determination, Dr. Mungara's medical opinion of 2020 does relate to the relevant disability period.[59] Although her opinion was rendered a

---

[55] A.R. 266–70.

[56] Docket 25 at 10.

[57] Defendant refers to Dr. Mungara's "extreme opinion in April 2020." Docket 31 at 4. The questionnaire was signed by Dr. Mungara on March 12, 2020. A.R. 266–70. A single, additional page was added to Dr. Mungara's opinion and dated April 6, 2020. A.R. 265. The Court refers to these opinions together as Dr. Mungara's 2020 opinion.

[58] Docket 31 at 5–7.

[59] *See Taylor,* 659 F.3d at 1232 (finding that medical evaluations made after the relevant time period are relevant where they concern the claimant's condition during the time period at issue).

Case No. 5:20-cv-00011-SLG
Decision and Order
Page 11 of 16

few months after the ALJ's decision, it is based on her extended treatment of Plaintiff for several years preceding the ALJ's decision. Specifically, Dr. Mungara's opinion is based on her treatment examinations of Plaintiff from September 1, 2017 through January 31, 2020.[60] Thus, Dr. Mungara's opinion rendered in 2020 is clearly related to the relevant disability determination period.[61] Next, the Court looks to whether there is a reasonable probability that Dr. Mungara's opinion would change the outcome of the ALJ's decision.

Dr. Mungara's 2020 opinion provides new, material information that pertains to the period at issue in the ALJ's decision. Moreover, unlike her opinion letters from 2018 and 2019,[62] Dr. Mungara's 2020 opinion included detailed functional limitations, a summary of clinical findings, the duration of Plaintiff's diagnoses and symptoms, and other explanations not reviewed by the ALJ.[63] Dr. Mungara's opinions of work-preclusive

---

[60] A.R. 266–70.

[61] The relevant disability determination period is July 2, 2018 through January 23, 2020. A.R. 491–92.

[62] Dr. Mungara provided letters dated November 16, 2018 and September 3, 2019. In these letters, she listed Plaintiff's mental health symptoms, including: mood swings, anxiety, agitation, apathy, anhedonia, depression, low self-esteem, poor self-confidence, fear of failure, paranoia, lacking concentration and motivation, feeling overwhelmed, and worsening physical pain and health conditions. Dr. Mungara opined that Plaintiff easily became hyperverbal, overwhelmed, preoccupied, confused with memory and comprehending difficulties, indecisive with disorganized and delusional thoughts, and exhibited impulsive behavior with flashbacks. Dr. Mungara did not provide functional limitations. A.R. 1184, 1234. The ALJ considered Dr. Mungara's September 2019 letter and concluded Dr. Mungara's opinion that Plaintiff was "unable to work in a consistent, reliable, and sustainable manner" was not persuasive as it was inconsistent with the opinion of Michael Lace, Psy.D.; inconsistent with the medical record showing "normal mental status exams"; and inconsistent with Plaintiff's daily activities. A.R. 489. The ALJ did not address Dr. Mungara's November 16, 2018 letter. A.R. 1184.

[63] A.R. 266–70.

symptoms were related to Plaintiff's bipolar disorder,[64] generalized anxiety disorder, obsessive-compulsive disorder, post-traumatic stress disorder, and borderline personality disorder.[65] As a result, Plaintiff's RFC may not include all of Plaintiff's mental limitations. Therefore, there is a reasonable probability that Dr. Mungara's opinion would change the outcome of the ALJ's decision. Accordingly, the Court remands to the ALJ for consideration of Dr. Mungara's 2020 opinion.

2. *Additional Medical Records from July 2018 through December 23, 2019*

Plaintiff argues that the mental health treatment records submitted after the ALJ's decision "fill[ ] an evidentiary gap" in the records.[66] These additional mental health records date from July 2018 through December 2019; they document Plaintiff's continued mental health symptoms and the diagnoses upon which Dr. Mungara based her 2020 medical opinion.[67] For the reasons set forth above, Dr. Mungara's 2020 opinion shows a

---

[64] The ALJ did not address Plaintiff's bipolar disorder diagnosis. A.R. 484. Dr. Lace, the testifying mental health expert, did not identify bipolar disorder as a diagnosis in his testimony. A.R. 512. When Plaintiff asked about her bipolar disorder diagnosis at the hearing, Dr. Lace answered, "Ah yes, there were occasional references to mood instability and bipolar disorder, that was not [a] [ ] severe condition based on the record. It would be more the anxiety area and the borderline personality area, and . . . there's a lot of symptom overlap between those two conditions." A.R. 514.

[65] A.R. 1184, 1234.

[66] Docket 25 at 10.

[67] Dr. Mungara's 2020 opinion covered the period from September 1, 2017 through January 31, 2020. A.R. 266. The mental health records from July 2018 through December 2019 are interspersed with some records primarily referring to Plaintiff's physical impairments and some duplicates. However, the bulk of the additional records for this period support Dr. Mungara's 2020 mental health opinion. *E.g.,* A.R. 17–57, 63–7, 72–77, 139–55, 159–73, 176–86, 192–200, 210–12, 307–35.

reasonable probability of changing the ALJ's decision. The additional mental health records from July 2018 through December 2019 support Dr. Mungara's 2020 opinion. Thus, these records show a reasonable probability for changing the outcome of the ALJ's decision. The Court remands to the ALJ for consideration of the additional mental health records from July 2018 through December 2019, excluding any duplicate records.

### 3. Additional Treatment Notes after January 31, 2020

The Appeals Council determined that Plaintiff's additional evidence from Ketchikan Indian Community Tribal Health Clinic for the period of January 29, 2020 through June 10, 2020 did not "relate to the period at issue" because the ALJ decided Plaintiff's case on January 23, 2020.[68]

The additional treatment records after January 31, 2020 do not relate to the period at issue because they document treatment examinations after the ALJ's decision and were not used to formulate Dr. Mungara's 2020 opinion. Therefore, the additional treatment records after January 31, 2020 do not have a reasonable probability of changing the outcome of the ALJ's decision.

### B. Full and Fair Development of the Record

Plaintiff argues that the ALJ violated his duty to develop the record by failing to ask Plaintiff at her hearing "whether there were any outstanding records."[69] The Commissioner contends that Plaintiff "fails to establish how the record was ambiguous or

---

[68] A.R. 2, 390–478.

[69] Docket 25 at 10.

inadequate when it included Dr. Mungara's [2019] letter, numerous mental status examinations, and the persuasive testimony of medical expert Dr. Lace, whom the ALJ called to testify at the hearing."[70]

Because the ALJ's determination is not supported by substantial evidence in light of the "record as a whole, including the [new] evidence"[71] provided by Dr. Mungara and the earlier treatment records supporting her 2020 opinion, the Court does not reach the issue of the ALJ's duty to develop the record based on that same evidence.

C. Scope of Remand

Plaintiff asks the Court to enter judgment under sentence four of 42 U.S.C. § 405(g) and reverse the Commissioner's final decision with a remand for further administrative proceedings.[72] The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[73] In this case, the proper remedy is to reverse and remand for further administrative proceedings at which the ALJ can reconsider his decision in light of the additional evidence that was submitted to the Appeals Council.

---

[70] Docket 31 at 7–8.

[71] *Brewes v. Comm'r Soc. Sec. Admin.,* 682 F.3d 1157, 1160 (9th Cir. 2012).

[72] Docket 25 at 13.

[73] *Treichler,* 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's Plaintiff has demonstrated that new, material evidence related to the time frame at issue was presented to the Appeals Council and there is a reasonable probability that this additional evidence would change the outcome of the ALJ's decision. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 25 is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 28th day of March, 2022, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE